**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**March 3, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP592-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CF727

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

LANCE L. BLACK,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: JANET C. PROTASIEWICZ, Judge. *Affirmed*.

Before Brash, P.J., Dugan and Donald, JJ.

¶1 DONALD, J. Lance L. Black appeals the judgment of conviction, following a jury trial, of one count of being a felon in possession of a firearm and one count of possession of THC, with a dangerous weapon penalty enhancer, as a second or subsequent offense. We affirm.

**BACKGROUND**

¶2      On February 15, 2017, Black was charged with one count of being a felon in possession of a firearm and one count of possession of THC, with a dangerous weapon penalty enhancer, as a second or subsequent offense. The matter proceeded to a four-day jury trial which resulted in a hung jury. The trial court declared a mistrial and the State informed the trial court that it would retry the case. Thereafter, Black became verbally and physically disruptive, swearing at the trial court and pounding on a table.

¶3      The second trial was conducted over the course of five days. On the second day of trial, the State presented identification testimony implicating Black. At that point, Black became disruptive, prompting the trial court to ask Black to "calm down a little bit." Black asked the trial court to stop the trial, telling the court that "[t]his trial has already been a hung jury. They don't have no fingerprints. They don't have any DNA." The trial court adjourned for a break and dismissed the jury, at which point Black became verbally and physically aggressive, kicking over a table, swearing at the court, and disparaging his counsel. Black was then removed from the courtroom and trial counsel moved for a mistrial. The trial court denied the motion.

¶4      Following the lunch break and outside of the presence of the jury, the trial court stated that Black refused to leave his jail cell to be present for the remainder of the trial. The trial court moved the trial to a higher security courtroom with a glass booth, where Black would be able to see and hear the proceedings if he returned. Black was eventually brought to the booth, at which point he caused another disturbance by shouting and banging on the glass. The trial court again ordered Black removed and found that Black voluntarily absented himself from his

trial. The jury returned and the trial resumed with the State's presentation of witnesses.

¶5      On the morning of the third day of trial and outside of the presence of the jury, Black's trial counsel requested a competency evaluation, telling the trial court that Black has diagnosed mental health issues that possibly had been exacerbated by the stress of trial. Counsel told the trial court that Black's actions were "extreme" and that Black refused to communicate with him or come to the courtroom. The trial court stated that based on its observations, Black's outbursts only occurred when Black felt that the trial was not moving in his favor. The trial court expressed concern over delaying proceedings, but stated that it would order a competency evaluation if Black could be evaluated over the noon hour, so as not to "halt any of the proceedings." The trial court stated:

> [T]he jury's not coming back until 9:30. If somebody from the forensic unit can make an emergency trip to his cell, I mean, I'll allow it. I've already got one juror here. These jurors already were subjected to a four-hour delay yesterday. I certainly am not going to allow Mr. Black's outbursts and behavior to result in more extreme delays or result in a mistrial, for that matter.
>
> So let's see if we can get somebody there promptly. If we can, I'll send that person over and order it. If we can't, we'll just proceed with the trial once the jurors are here.

Dr. Deborah Collins[1] almost immediately evaluated Black. Meanwhile, the jury was brought back into the courtroom and the trial continued.

¶6      After the jury was dismissed for the morning, the trial court held a competency hearing. Dr. Collins testified that she evaluated Black in his jail cell. Dr. Collins told the trial court that Black was coherent, but "explosive" and

---

[1] The parties stipulated to Dr. Collins's credentials.

"agitated." She also told the trial court multiple times that Black was not "psychotic," but that he "lack[ed] substantial capacity, mental capacity, to understand the proceedings or assist in his defense, with emphasis on being of assistance in his defense, and that he's not competent to proceed." The trial court expressed concerns about Black's actions being "convenient behavior on his part in an attempt to manipulate the system." Dr. Collins acknowledged the trial court's concerns and stated that while Black's behavior had a "volitional" element, it also resulted from a "primitive personality structure," in which Black experienced paranoia and an inability to maintain behavioral control. Dr. Collins told the trial court that Black would benefit from a mood stabilizing medication and that Black told Dr. Collins that he was previously treated with mood stabilizing medications and an antidepressant. Following Dr. Collins's testimony, the trial court adjourned the proceedings through the lunch hour.

¶7 When the proceedings resumed, the trial court issued its decision on Black's competency, finding Black competent to stand trial. The trial court stated:

> I … respect Dr. Collins a great deal. But we gave Dr. Collins very limited information, and she had limited time with Mr. Black. I note that Mr. Black did conduct himself extremely well during the first trial. He took the stand. He behaved extremely well on the stand the first time.
>
> I do believe that when he was confronted with the reality that he wasn't being released after the hung jury, he had his outburst. In this trial, when the trial began, he was comporting himself very well. He had in front of him Wisconsin statute books. He had notepads. I think he had been reviewing the discovery. He could certainly make coherent statements about the discovery, what information he had, what information he thought he didn't have.
>
> … [H]e was clearly able to comport himself. And I observed him becoming more and more, as I indicated before, agitated as the State's evidence in regard to identification became stronger.

4

….

> I respect Dr. Collins. I especially point to her testimony where she indicated that he's not psychotic. She did say she thinks these stressors exceeded his capacity for being able to deal with them. But knowing the history and the history that I have of Mr. Black, as compared to the limited history that Dr. Collins has of … [Mr.] Black, I do see it differently.
>
> So I am finding that Mr. Black is competent to proceed. We will continue with the trial.

¶8    The trial continued in Black's absence and the jury found Black guilty as charged. Black was sentenced to ten years of incarceration on the felon in possession charge, bifurcated as five years of initial confinement and five years of extended supervision. On the possession of THC charge Black was sentenced to four years of incarceration, bifurcated as three years of initial confinement and one year of extended supervision, consecutive to count one. This appeal follows.

## DISCUSSION

¶9    On appeal Black contends that the trial court erroneously exercised its discretion by "prejudg[ing]" Black's competency when it found Black competent to stand trial. Specifically, Black contends that prior to his competency evaluation, the trial court indicated that it was not inclined to delay the trial because of Black's behavior and therefore had implicitly already decided the issue of Black's competency. As support for his argument, Black contends that the trial court disregarded Dr. Collins's testimony, which was the only evidence of Black's state of mind. Although we acknowledge Black's concern, we conclude that the trial court did not "prejudge" Black's competency and properly exercised its discretion.

5

¶10   WISCONSIN STAT. § 971.14(1r) (2017-18)[2] requires a trial court to conduct competency proceedings if there is "reason to doubt" that the defendant is competent to proceed. *Id.*; *State v. Byrge*, 2000 WI 101, ¶29, 237 Wis. 2d 197, 614 N.W.2d 477.  A defendant is incompetent when he lacks substantial mental capacity to understand the proceedings or assist in his own defense. WIS. STAT. § 971.13(1). More specifically, a defendant is incompetent if he lacks the capacity to understand the nature and object of the proceedings, to consult with his attorney, and to assist in the preparation of his defense. *Byrge*, 237 Wis. 2d 197, ¶27.  "A reason to doubt competency can arise from the defendant's demeanor in the courtroom, his colloquies with the trial court judge, or by motion from either party." *Id.*, ¶29.

¶11   Determining competency to stand trial is a judicial determination, not a medical one. *Id.*, ¶31.  The trial court must weigh all of the evidence presented and is "in the best position to decide whether the evidence of competence outweighs the evidence of incompetence[,] ... [and] to make decisions that require conflicting evidence to be weighed." *State v. Garfoot*, 207 Wis. 2d 214, 222-23, 558 N.W.2d 626 (1997).  Indeed, "[a]lthough the court must ultimately apply a legal test, its determination is functionally a factual one:  either the [S]tate has convinced the court that the defendant has the skills and abilities to be considered 'competent,' or it has not." *Id.* at 223.  Finally, "[b]ecause a competency determination depends on the [trial] court's ability to appraise witness credibility and demeanor, 'there are compelling and familiar justifications for leaving the process of applying law to fact to the trial court.'" *Byrge*, 237 Wis. 2d 197, ¶45 (citation omitted).  As such, we

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

will not reverse a trial court's determination of competency unless it was clearly erroneous. *See id.*, ¶¶45-46.

¶12 Black contends that "[p]rejudging competency is not an exercise of discretion," but rather is "an expression of the [trial] court's ultimate opinion that regardless of what competency evidence might be placed before it that the trial would continue." A determination of whether the trial court "prejudged" Black's competency necessarily requires us to decide whether the court actually assessed the evidence before it, which can include credibility determinations and the trial court's own firsthand observations. *See State v. Weber*, 146 Wis. 2d 817, 828, 433 N.W.2d 583 (Ct. App. 1988). Therefore, with the appropriate standard of review in mind, we conclude that the trial court did not erroneously exercise its discretion in finding Black competent to stand trial. Although Dr. Collins opined that Black was not competent at the time of her evaluation, she repeatedly told the trial court that Black was not "psychotic" and acknowledged the trial court's concern that Black's behavior was a means of manipulating his trial proceedings, calling Black's behaviors "volitional" to some degree. Dr. Collins also stated that she did not review Black's previous treatment records and stated that any evidence of Black's medication use for mental health issues was self-reported. Although Dr. Collins ultimately determined that Black lacked the ability to exert behavioral control, the trial court cited its own observations that Black had exerted behavioral control all throughout his first trial and to some extent during the second trial. The trial court noted a pattern of behavior, finding that Black's outbursts occurred only when he felt the proceedings were unfavorable to him.

¶13 Moreover, the trial court was not required to adopt Dr. Collins's findings. *See Pautz v. State*, 64 Wis. 2d 469, 475-77, 219 N.W.2d 327 (1974) (stating that in evaluating the legal status of a defendant's mental capacity, a trial

7

court may accept, reject, and weigh the evidence provided by expert witnesses). The trial court noted that it had more observational time with Black than Dr. Collins and during that time the court witnessed Black "comporting himself very well." The trial court stated that Black actively participated in both trials by coherently testifying in his own defense during the first trial, and by reviewing discovery and taking notes during the second trial. The trial court also found that Black's behavior deteriorated when Black was confronted with the reality that the proceedings were not advancing in his favor. Black's behavior might have been bizarre and volatile, but bizarre and volatile behavior does not necessarily render a defendant incompetent. *See Byrge*, 237 Wis. 2d 197, ¶¶48-49 (explaining the difference between competency as a legal determination versus a medical determination). The trial court found these behaviors controllable, rather than reflective of incompetency.

¶14 Bearing in mind that legal competency is a judicial determination, we conclude that the trial court did not prejudge Black's competency and properly exercised its discretion.[3] We affirm the trial court.

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.

---

[3] We acknowledge Black's concern that the trial court's comments about trial delays, as well as the speed with which the evaluation and competency hearing took place, suggest that the trial court prioritized expediency over Black's evaluation. Indeed, the trial court even acknowledged that it gave Dr. Collins "limited time with [Black]." Dr. Collins's limited window of time with Black, however, did not hinder the trial court's ability to make a legal determination about Black's competency. As discussed, we review the trial court's decision for an erroneous exercise of discretion. The trial court articulated its observations and properly exercised its discretion.

No.   2019AP592-CR(C)

¶15   DUGAN, J. (*concurring*).  I concur with the Majority opinion that the trial court did not "prejudge" Black's competency.  Whether the trial court prejudged Black's competency is the sole issue before this court.  In his brief on appeal Black states, "[t]he trial court's statements of the law and facts would be a sufficient exercise of discretion but for one thing.  It had prejudged Black's competency before hearing any evidence."  Whether the trial court erroneously exercised its discretion in finding that Black was competent is not an issue before this court.

¶16   In support of his assertion that the trial court prejudged his competence, Black cites the trial court's comment that "[t]hese jurors already were subjected to a four-hour delay yesterday.  I certainly am not going to allow Mr. Black's outbursts and behavior to result in more extreme delays or result in a mistrial, for that matter."  Black then notes that "[o]ne might find this statement was simply a matter of the court expressing frustration that the jury trial was not moving forward."  Black then states that "[i]t is more likely, however, an expression of the court's ultimate opinion that regardless of what competency evidence might be placed before it that the trial would continue."  I believe the record supports the conclusion that the trial court's statement was merely an expression of frustration that the delays were impacting the jurors.

¶17   As Black concedes, the trial court ordered that Black be evaluated for competency.  Dr. Collins evaluated him for competency and testified before the trial court.  After hearing Dr. Collins's testimony the trial court stated, "I think what I'm going to do is give everybody an hour to chew on what you just heard."  It then

asked trial counsel if he was going to be requesting a mistrial and that Black be medicated. Trial counsel answered that he would. The trial court then stated, "I quite frankly am a little bit torn based on what I've heard." It then instructed the State to be prepared to address trial counsel's request.

¶18 When the proceeding resumed and the trial court was on the record, as the Majority notes, the trial court discussed Dr. Collins's testimony and explained why it disagreed with the doctor's conclusions. On appeal Black acknowledges that the trial court took an interest in ensuring that a proper competency examination occurred and that a hearing was conducted. However, he asserts that "[n]evertheless, Black submits the trial court's frustration in not moving this second trial forward clouded its judgment and caused it to prejudge his competency." I conclude the opposite—the record demonstrates that the trial court did not prejudge Black's competency.

¶19 The Majority opinion goes on to find that the record supports the trial court's finding that Black was competent. Because that issue was not raised on appeal this court should not address it. *See **Waushara Cnty. v. Graf***, 166 Wis. 2d 442, 451, 480 N.W.2d 16 (1992). For that reason, I do not join in the Majority's holding that the trial court did not erroneously exercise its discretion in finding Black competent to stand trial.